IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEON H. SANDATE,
        **Plaintiff,**

vs.                                                **Civil No. 02-0371 RLP**

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

        **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the Court of Plaintiff's Motion to Reverse or Remand Administrative Agency Decision. (Docket No.8). Plaintiff seeks disability income and supplemental security benefits for a closed period, alleging disability commencing in July 1995 and terminating on June 30, 1998, when he returned to substantial gainful activity. For the reasons stated herein Plaintiff's Motion is denied, the Commissioner's decision denying benefits is affirmed, and this matter is dismissed with prejudice.

**I.**     **Background**

Plaintiff was born on April 19, 1941. (Tr. 137). He completed the 9th grade. (Tr. 157). His prior work involved labor and landscape maintenance. (Tr. 62, 19). He sustained lumbar myofacial strain, superimposed over longstanding degenerative changes of the cervical spine in a work related accident on July 26, 1995. (Tr. 344). In addition, he had preexisting rotator cuff impingement. Id.

As of September 26, 1995, Plaintiff's treating orthopedic surgeon, restricted him to lifting no more than 25 pounds, with no bending or stooping. He was able to sit and drive without problem, and walk with minimal pain. (Tr. 334, 339). Plaintiff underwent several weeks of physical therapy, initially with good progress. (Tr. 332-333). As of November 9, 1995, he complained of significant

shoulder pain with raising his arms overhead or with horizontal abduction,  headache, and constant minimal-moderate pain in the right sacroiliac.  On physical exam, he displayed no neurological problems, and had a negative straight leg raising test.  He did demonstrate diffuse tenderness of the both shoulders, cervical spine and lateral neck.  X-rays showed degenerative disease of the cervical spine and mild degenerative joint disease of the left shoulder.  (Tr. 316-318).

Plaintiff was seen by a different orthopedist, Dr. Kim, on December 5, 1995.  At that time his complaints included constant neck pain radiating to his shoulders, numbness of his elbows radiating into his arm, occasional numbness of his hands, daily headaches which he treated with Tylenol, constant low back pain, right hip pain causing his leg to drag and shoulder pain.  Dr. Kim documented an extensive physical examination and diagnosed chronic cervicodorsal strain, chronic lumbosacral strain, and bicipital tendonitis of both shoulders.  He recommended more physical therapy, and concurred that Plaintiff should lift no more than 25 pounds, with no repetitive bending, stooping or overhead work.  (Tr. 309-313).  On May 24, 1996, Dr. Kim indicated that Plaintiff's condition was permanent, and that he was precluded from heavy lifting, overhead work and repetitive flexion or extension of the head and neck. He also advised the use of over-the-counter pain medication and a home exercise program.  (Tr. 287-291).  When he last saw Dr. Kim on August 9, 1996, Plaintiff complained of severe low back and neck pain, and difficulty sleeping and sitting.  Dr. Kim noted muscle tenderness over the lower cervical spine, pain on range of motion of the cervical and lumbar spine, and bicipital tendonitis of both shoulder joints.  He advised Plaintiff to continue home exercises, and to avoid repetitive flexion or extension of the neck and back, and prolonged sitting activities. (Tr. 220-221, 363).

Plaintiff was evaluated by Donald Dinwoodie, M.D., on October 14, 1996, in connection with

his worker's compensation claim.  (Tr. 242-274).  Plaintiff complained of episodic neck, shoulder and lumbar back pain.  Dr. Dinwoodie conducted a very through physical examination and review of medical records.  Dr. Dinwoodie felt that Plaintiff overstated his pain responses, but nonetheless diagnosed lumbar and cervical strain as a result of Plaintiff's work injury, a pre-existing rotator cuff injury of both shoulders, and degenerative disc disease of the lumbar and cervical spine without radiculopathy.  He limited Plaintiff to performing less than very heavy work.

Plaintiff was placed under video surveillance in November 1996, in connection with his workman's compensation claim.  The surveillance tape was reviewed by Dr. Dinwoodie, who described Plaintiff's actions in detail in a letter dated January 7, 1997.[1] (Tr. 275-278).  Dr. Dinwoodie stated the Plaintiff's activities raised questions as to his credibility in terms of his claimed limitations, in that  Plaintiff at all times appeared to be freely mobile and able to  repeatedly bend, kneel, twist and assume awkward positions. (Tr. 278).  Dr. Dinwoodie continued to recommend that Plaintiff refrain from very heavy work.

On March 13, 1997, Dr. Kim  reviewed  a different surveillance tape and additional medical records.[2]  (Tr. 357-361).  He agreed that Plaintiff appeared to move freely and without difficulty in his shoulders, cervical or lumbar spine, but noted that the actions performed were not heavy in nature,

---

[1]Dr. Dinwoodie described activities on two and possibly three different days which involved flexing at the hips, leaning over to an almost horizontal position while reaching, leaning and twisting "more than usual" with no difficulty noted, bending easily to pick up something from a garage floor,  maintaining a flexed position of the hips, vigorously pulling on a cord in an apparent attempt to start  lawn mower, pulling on a garden hose and watering, carrying trash buckets in both hands simultaneously, bending to pick up trash, using repetitive motions of his  arms  to wrap an object with tape, using a hack saw, repeatedly flexing and bending while exiting a garage, squatting then assuming a semi-twisted position in the low back while filling the tires of his car with air, reaching partially upward to close a garage door, and climbing stairs.  (Tr. 275-277).

[2]Dr. Dinwoodie indicated that the tape he reviewed had an undated section and two sections dated November 21, 1996 and November 23, 1996.  (Tr. 275-275).  Dr. Kim indicated that  the tape he reviewed had sections dated October 11, 12 and 14. (Tr. 360).

3

and that it would not be difficult for Plaintiff, given his height, to reach overhead to pull down a garage door. (Tr. 360). Dr. Kim suggested that Plaintiff continue to avoid heavy lifting, overhead work and repetitive flexion or extension of the head and neck. (Tr. 360, 291).

Plaintiff was treated at the St. Francis Clinic, Carlsbad, New Mexico, in March 1998 for back pain and general fatigue. (Tr. 435). He was treated with *Vicodin*.[3] Plaintiff returned to work part time at a garden store in June 1998. (Tr. 207, 212, 45). October 12, 1998, clinic notes diagnose degenerative joint disease of the cervical spine, with an unspecified decrease in upper extremity strength, tenderness of the trapezius musculature and normal sensation. (Tr. 453).

Plaintiff's first administrative hearing was held October 20, 1998. (Tr. 40-73). He testified that he had returned to work and was working 16-20 hours a week at a garden center sweeping offices, taking out trash, watering, straightening flower beds and picking up empty trays. (Tr. 78, 45-48). He had been offered full time work, but didn't think he could tolerate it. (Tr. 45-48). His additional activities included washing dishes, doing laundry, cutting the grass, watching TV and occasional travel to the mountains, where he has a small cabin. (Tr. 46-47). He stated that he had very limited reading and writing skills, and did not have to use reading or writing in his prior work. (Tr. 50, 53). In terms of his health, he testified that problems with his back, shoulders, hands and neck impacted his ability to work in general, although they did not interfere with his working at the garden store. (Tr. 55-57). He stated that he could stand about 1 hour before he had to sit for 5-10 minutes, that weather caused additional aching and that he treated his pain complaints with muscle relaxants, Ben-Gay ointment and Ibuprofen. (Tr. 56-57, 60-61).

---

[3] *Vicodin* is indicated for the relief of moderate to moderately severe pain. 1998 Physician's Desk Reference, p 1366.

The ALJ denied Plaintiff's claim on December 12, 1998. (96-109). Plaintiff's request for review was granted by the Appeals Council on February 29, 2000. The ALJ's decision was vacated, and the matter was remanded for further proceedings.

Plaintiff returned to full time work in April 2000, doing maintenance and landscape upkeep at an apartment complex. (Tr. 30). An orthopedic evaluation was performed on January 30 and February 1, 2001 by Deborah Schenck, M.D. (Tr. 467-484). Dr. Schenck noted visual evidence of mild degenerative joint disease of the hands and knees, full range of motion of the cervical spine with some crepitus, limited range of motion of the shoulders with a great deal of crepitus of the shoulder joints; mild bilateral muscle spasm of the thoracolumbar spine with some limitation of motion, no swelling, erythema or deformity of any upper or lower extremity joints, no upper or lower extremity muscle atrophy, normal grip strength, some discoloration at the shins, fungal infection of the toe nails and back, and 1+ equal deep tendon reflexes bilaterally. In addition, Dr. Schenck reviewed X-rays which showed severe degenerative changes in the cervical spine and degenerative changes in the lumbar spine and left shoulder. She concluded: "This client, although he is currently performing moderate to heavy labor, is undoubtedly doing it in considerable pain. I would restrict him to occasional lifting of 20 lbs, frequent lifting of 10 lbs and limit his overhead work to rare." (Tr. 468).

Plaintiff appeared at a hearing before a different ALJ on September 6, 2001. (Tr. 75-91). He testified as to his educational back ground, the physical demands of his prior landscaping job and the physical problems he had after his work injury and currently. He testified that from July 1995 to July 1998, when he returned to work, he would have been able to do a little light work in landscaping, but nothing heavy; that he couldn't work during that time frame because of back and shoulder pain and arthritis in his hands. (Tr. 88-90).

## II.    ALJ's Decision

The ALJ found that:  Plaintiff had not engaged in substantial gainful activity during the period under review ( June 26, 1995 to July 1, 1998);  Plaintiff had severe impairments consisting of degenerative joint disease of the cervical spine, left rotator duff impingement and lumbar myofascial strain (Step two); These impairments, as  well as asymptomatic hepatitis, did not meet or equal the severity required for a listed impairment (Step three); Plaintiff's allegations regarding his limitations were not totally credible; Plaintiff retained the residual functional capacity for full range of medium work; Plaintiff could not perform his past relevant work (Step four), and application of the Medical-Vocational Guidelines for an individual closely approaching advanced age and individuals of advanced age (20 C.F.R. Pt. 404, Subpt. P, App. 2, §§203.18 and 203.11) resulted in a finding of not disabled (Step five).

## III.    Issues presented

Plaintiff raises the following issues:

A.      Whether the ALJ erred in considering Dr. Dinwoodie's review of surveillance tapes.

B.      Whether substantial evidence supports the ALJ's determination that Plaintiff can perform the full range of medium work.

C.      Whether the ALJ failed to consider Plaintiff's borderline age status in applying the Medical-Vocational Guidelines ("Grids" herein).

## IV.    Standard of Review.

The Social Security Act provides that final decisions of the Commissioner shall be subject to judicial review. *42 U.S.C. §405(g)*.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ."  *Id.*  I review the Commissioner's

decision to determine only whether the decision is supported by substantial evidence and whether correct legal standards were applied. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable man might accept to support the conclusion. *Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir. 1988). The determination of whether substantial evidence supports the Commissioner's decision is not a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). I will not reweigh the evidence, but will examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision in order to determine if the decision is supported by substantial evidence. *Glenn*, 21 F.3d at 984.

**IV.  Analysis**

> A.  The ALJ properly considered Dr. Dinwoodie's review of Surveillance Tapes.

Plaintiff contends that it was improper for the ALJ to rely on Dr. Dinwoodie's report, which described and commented on Plaintiff's activities as recorded on surveillance tapes, in assessing Plaintiff's credibility and residual functional capacity. Plaintiff argues that because viewing the tape did not alter Dr. Dinwoodie's opinion regarding Plaintiff's limitations, his comments regarding Plaintiff's activities is somehow incompetent. Plaintiff cites no authority for this position. While the ALJ did not independently view the video tapes, it was not error for him to consider Dr. Dinwoodie's report which described in detail the activities observed. Dr. Dinwoodie's description of Plaintiff's activities is akin to observations made during a medical office visit, when the claimant is not aware he is being observed. Such observations clearly have a place in the overall evaluation of a claimant's alleged impairment.

B.    Substantial evidence supports the ALJ's determination that Plaintiff
      can perform the full range of medium work.

The determination of residual functional capacity is an administrative finding of what an individual can still do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). It assesses the extent to which an individual's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [an individual] can do in a work setting." Id. In evaluating Plaintiff's RFC the ALJ necessarily considered whether Plaintiff's complaints of disabling pain were credible. He found they were not. Substantial evidence supports the ALJ's credibility determination.[4] (Tr. 20-21).

Medium work involves lifting 25 pounds frequently and up to 50 pounds occasionally, and standing or walking for approximately six hours in an eight-hour day. See S.S.R. 83-10, 1983 WL 31251, at *6; 20 C.F.R. §§ 404.1567(c), 416.967(c).

The ALJ discussed the evidence in detail in assessing Plaintiff's residual functional capacity:

> . . . (T)he claimant retains the following residual functional capacity: for a full range of medium work. He is able to lift 25 pounds frequently and 50 pounds occasionally. He can stand and walk for at least six hours per day. He is restricted only from performing very heavy work (citing Dr. Dinwoodie's October 14, 1996

---

[4] The ALJ noted that Plaintiff expressed no desire to return to work in November 1995 (citing Dr. Matsuura's report, Tr. 323) and that physical therapy received from September 1995 to April 1996 had improved his symptoms to the mild level. (citing Tr. 371-416). Plaintiff complained of problems using his hands (Tr. 89) yet no diagnosis of arthritis affecting the hands was made during the relevant period, and that lab results from March 1998 were negative for inflammatory arthritis (citing March 1998 lab report, Tr. 457). The ALJ acknowledged that Plaintiff's treating physician restricted him from performing heavy lifting, overhead work and more than limited bending of his neck.(citing Dr. Kim's May 24, 1996 report, Tr. 291), but stated that surveillance video showing him performing maintenance of cars, lifting up trash from the ground and using a hacksaw called these limitations into question, raising serious issues as to his credibility. (citing to Tr. 275-278). He reviewed Plaintiff's pain medication usage, Vicodin and over the counter medications for pain, which caused no side effects. He referred to Dr. Schenck's February 2001 examination, stating that while Dr. Schenck restricted Plaintiff to light work, she also found evidence of symptom magnification, and characterized Plaintiff's current full time work activity as moderate to heavy labor. (citing Dr. Schenck's report, Tr. 467-468).

report, Tr. 272).  Initially he was restricting (sic) to lifting no more than 25 pounds, but he could perform all but heavy lifting withing 12 months after his injury (comparing Dr. Matsuura's October 17, 1995 report Tr. 331  with Dr. Kim's May 24, 1996 report,  Tr. 291).  Although his doctors have given him other restrictions, these are characterized as prophylactic, and not based on any actual functional limitations. (citing Dr. Kim's May 24, 1996 report, Tr. 291). Further (other restrictions) were called into question by activities as seen in the surveillance video.  (citing Dr. Dinwoodie's January 7, 1997 review of surveillance video, Tr. 275-279).  His range of motion in his spine was essentially normal.  (citing Dr. Matsuura's November 9, 1995 report, Tr. 324).   The degenerative joint disease in his shoulder was characterized as very mild.  (Id.,  Tr. 325).  After reviewing the records as a whole I conclude that the evidence before me supports no additional limitations.

(Tr. 20-21).

Based on the foregoing, I find that the ALJ's determination that Plaintiff retained the RFC for

the full range of  medium work is supported by substantial evidence.

> C.      Plaintiff does not meet the criteria for application of  the work out worker
>         regulations.

Finally, Plaintiff contends that the ALJ failed to properly apply the "Worn-Out Worker"

regulations, 20 C.F.R.  §§404.1562, 416.962.   These identical  regulations provide:

> If you have only a marginal education and work experience of 35 years or more during which you did arduous unskilled physical labor, and you are not working and are no longer able to do this type of work because of a severe impairment, we will consider you unable to do lighter work, and therefore disabled.

An individual is considered to have a marginal education if "he ... has no more than a sixth-grade

elementary school education."  S.S.R. 82-63 at 451.  Plaintiff completed the ninth grade. (Tr. 157),

therefore is considered to have a "limited" education.   Accordingly, he does not meet the first

requirement for application of 20 C.F.R.  §§404.1562, 416.962.

In his Reply brief, Plaintiff also argues that the ALJ ignored the "borderline age" rules.   A

borderline situation exists "where there would be a shift in results under the Grid caused by the

passage of a few days or months." *See Chester v. Heckle*r, 610 F.Supp. 533, 534 (S.D.Fla.1985). In such situations, the ALJ may not mechanically apply the Grids, but must apply "more individualized determination of the appropriate age category." *Leyba v. Chater,* 983 F.Supp. 1048, 1051 (D. N.M. 1996).   I have previously indicated that substantial evidence supports the ALJ's finding that Plaintiff retained the RFC for the full range of medium work.  Plaintiff was 54, or closely approaching advanced age, on this alleged date of onset of disability, and 57, or of advanced age, when he returned to work.  There is no shift in the results obtained through application of the Grids given this RFC, as both advanced age, 20 C.F.R. Pt. 404,Subpt. P, App. 2 § 203.11[5], and closely approaching advanced age 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§203.18[6], result in a finding of not disabled.  Accordingly,  no borderline age situation arose.

In conclusion, the Court finds that:

(1)    The ALJ properly considered evidence of Plaintiff's activities as described in Dr. Dinwoodie's review of surveillance tapes;

(2)    Substantial evidence supports the ALJ's finding that Plaintiff retained the residual functional capacity for the full range of medium work, and

(3)    The "worn out worker" regulations and "borderline age" rules do not apply to the facts of this case.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or  Remand [Docket No.8]

---

[5]Advanced age (55 and older), limited or less education, unskilled prior work experience, RFC for medium work. *See* 20 C.F.R. §404.1563, 404.1564.

[6]Closely approaching advanced age (50-54), limited or less education (generally, 7th-11 grade of formal education), unskilled or no prior work experience.  *See* 20 C.F.R. §404.1563, 404.1564.

is denied.

**Richard L. Puglisi**
**United States Magistrate Judge**
**(sitting by designation)**